Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>V.<br><br>LEANDRO JOAQUÍN ZULUETA MARTÍNEZ<br><br>Apelante | TA2026AP00401 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Caso Núm.: D2TR2026-0002<br><br>Por: Infr. Art. 7.02 de Ley 22-2000 |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2026.

Comparece ante este Tribunal de Apelaciones el señor Leandro Joaquín Zulueta Martínez (en adelante, parte apelante o señor Zulueta Martínez), mediante el presente recurso de apelación, y nos solicita la revocación de la Sentencia dictada por el Tribunal de Primera Instancia, Sala de Guaynabo, el 20 de marzo de 2026, notificado el 27 de marzo de 2026. Mediante este, el foro primario declaró culpable a la parte apelante por infracción al Artículo 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-200, 9 LPRA sec. 5204.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

### I

Por hechos acaecidos el 21 de noviembre de 2025, el Ministerio Público presentó una *Denuncia* en contra de la parte apelante por infracción al Artículo 7.02 de la Ley Núm. 22-2000, *supra.* En la misma, se le imputó conducir un vehículo marca Ford,

modelo F-150 del año 2025, de forma ilegal, voluntaria, a propósito y/o con conocimiento, bajo los efectos de bebidas embriagantes. En específico, se alegó que, durante la intervención que llevó a cabo la agente Brenda Fuentes Sánchez (en adelante, agente Fuentes Sánchez) por infracciones a la Ley de Vehículos y Tránsito, *supra*, el señor Zulueta Martínez "expelía un fuerte olor a alcohol, dificultad para sostenerse de pie, se encontraba orinando y tenía los ojos rojizos".[1] Asimismo, se indicó que, luego de leerle las advertencias de ley correspondientes, el señor Zulueta Martínez se sometió libre y voluntariamente a una prueba de aliento con el instrumento de medición *Intoxilyzer 9000*, y arrojó un 0.153% de alcohol en su organismo.

Acontecidos los trámites de rigor, el 20 de marzo de 2026, se celebró el juicio en su fondo. En el mismo, declaró la agente Fuentes Sánchez, como testigo del Ministerio Público. Por igual, el Ministerio Público presentó la siguiente prueba documental:

- **Exhibit 1:** licencia de operador de Intoxilyzer 9000 y Alco-Sensor

- **Exhibit 2:** Advertencias de embriaguez con objeción de la defensa

- **Exhibit 3:** Pasos Operacionales con objeción de la defensa

- **Exhibit 4:** Análisis de aliento Intoxilyzer 9000

- **Exhibit 5 y 6:** Boletos de tránsito 1071470 y 1071471.

Por su parte, del expediente que obra en autos, no emana que la defensa haya presentado prueba documental o testifical a su favor.

Evaluada la prueba presentada, el 20 de marzo de 2026, el Tribunal de Primera Instancia dictó la *Sentencia* apelada, mediante la cual declaró *culpable* a la parte apelante por el delito imputado.

---

[1] *Véase*, Autos Originales, *Denuncia*, caso núm. GB2025CR00374.

En consecuencia, condenó al señor Zulueta Martínez al pago de una multa de ochocientos cincuenta dólares ($850.00), así como una pena especial de cien dólares ($100.00), y la Asistencia a un curso de Mejoramiento para Conductores del Departamento de Transportación y Obras Públicas (en adelante, DTOP). Por último, el foro primario ordenó la suspensión de la licencia de conducir del señor Zulueta Martínez por un término de treinta (30) días.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 20 de abril de 2026, el señor Zulueta Martínez presentó un *Escrito en Apelación* ante nos. Posteriormente, y conforme a los trámites pertinentes, el 14 de mayo de 2026 presentó su alegato. En el mismo, señala la comisión de los siguientes errores:

**ERROR PRIMERO:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE A LA AQUÍ APELANTE POR INFRACCIÓN AL ARTÍCULO 7.02 DE LA LEY DE VEHÍCULOS Y TRÁNSITO, CUANDO LA INTERVENCIÓN INICIAL CON SU PERSONA Y VEHÍCULO CARECIÓ DE MOTIVOS FUNDADOS Y DE JUSTIFICACIÓN CONSTITUCIONAL SUFICIENTE, EN VIOLACIÓN A LA CUARTA ENMIENDA DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS Y A LA SECCIÓN 10 DEL ARTÍCULO II DE LA CONSTITUCIÓN DE PUERTO RICO, POR LO QUE TODA LA EVIDENCIA OBTENIDA COMO RESULTADO DE DICHA DETENCIÓN E INVESTIGACIÓN SUBSIGUIENTE DEBIÓ SER SUPRIMIDA COMO FRUTO DE UNA INTERVENCIÓN ILEGAL.

**ERROR SEGUNDO:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE A LA AQUÍ APELANTE POR INFRACCIÓN AL ARTÍCULO 7.02 DE LA LEY DE VEHÍCULOS Y TRÁNSITO, CUANDO LA APRECIACIÓN DE LA PRUEBA DESFILADA NO JUSTIFICA UNA DETERMINACIÓN DE CULPABILIDAD MÁS ALLÁ DE DUDA RAZONABLE, POR SER DICHA PRUEBA INSUFICIENTE, CONFLICTIVA O INCAPAZ DE SOSTENER VÁLIDAMENTE LA CONVICCIÓN IMPUGNADA CONFORME A LAS EXIGENCIAS DEL DEBIDO PROCESO DE LEY.

**ERROR TERCERO:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA CONDENATORIA SIN FORMULAR DETERMINACIONES DE HECHO NI EXPONER FUNDAMENTOS DE DERECHO

SUFICIENTES QUE EXPLIQUEN LA BASE DECISORIA DE LA CONVICCIÓN, PRIVANDO ASÍ A LA AQUÍ APELANTE DE UNA REVISIÓN JUDICIAL ADECUADA Y EFECTIVA, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY, PARTICULARMENTE A LA LUZ DE LA INTERPRETACIÓN QUE HA HECHO EL TRIBUNAL SUPREMO DE PUERTO RICO SOBRE LA EXIGENCIA DE MOTIVACIÓN DECISIONAL COMO GARANTÍA INDISPENSABLE PARA COMPRENDER, IMPUGNAR Y REVISAR LAS DETERMINACIONES ADJUDICATIVAS DE LOS FOROS DE INSTANCIA.

**ERROR CUARTO:**
ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER LA MULTA CORRESPONDIENTE SIN CONSIDERAR, A FAVOR DE LA AQUÍ APELANTE, EL MARGEN DE ERROR INHERENTE A LAS PRUEBAS QUÍMICAS DE ALCOHOL, EL CUAL ASCIENDE A UNA CENTÉSIMA (0.01), POR LO QUE PROCEDÍA INTERPRETAR DICHO MARGEN DE FORMA FAVORABLE AL ACUSADO Y, EN CONSECUENCIA, REDUCIR LA PENA DE MULTA IMPUESTA.

El 15 de junio de 2026, la parte apelada representada por la Oficina del Procurador General de Puerto Rico, presentó *Alegato de El Pueblo de Puerto Rico*.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Deferencia al Foro Primario

En reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que: "nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical que se presenta ante ellos". *Pueblo v. Negrón Ramírez*, 213 DPR 895, 910 (2024). Además, "como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir las determinaciones del foro primario por sus propias apreciaciones". *Pueblo v. Toro Martínez*, 200 DPR 834, 858 (2018).

Como es sabido, al revisar cuestiones relativas a convicciones criminales "siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador por lo cual los tribunales apelativos sólo intervendremos con dicha apreciación cuando se demuestre la existencia de pasión, prejuicio, parcialidad o error manifiesto". *Pueblo v. Irizarry*, 156 DPR 780, 788-789 (2002). Ver también *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373-374 (2020). Únicamente ante la presencia de dichos elementos o cuando la apreciación de la prueba no concuerde con la realidad fáctica, o ésta sea inherentemente imposible o increíble, es que los foros revisores podemos intervenir con la apreciación de la prueba. *Pueblo v. Santiago*, 176 DPR 133, 148 (2009).

Esta deferencia judicial se debe a que es "el juez sentenciador, ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, man[i]erismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad". *Pueblo v. De Jesús Mercado*, 188 DPR 467, 478 (2013) citando a *Pueblo v. García Colón I*, 182 DPR 129, 165 (2011). En virtud de lo anterior, se puede concluir que el foro primario está en mejor posición para evaluar y adjudicar la credibilidad de un testigo. *Íd.* en la pág. 479.

### B. La duda razonable y la suficiencia de la evidencia

Según nuestro sistema de enjuiciamiento criminal, toda persona debe ser hallada culpable más allá de duda razonable. Esto es principio consustancial del precepto constitucional que dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho [...] a gozar de la presunción de inocencia". Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Cónsono con esta disposición constitucional, nuestro esquema procesal penal establece que "[e]n

todo proceso criminal, se presumirá inocente el acusado mientras no se probare lo contrario y en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá". Regla 110 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, R. 110.

Es por ello que en nuestro sistema de justicia criminal el Ministerio Público tiene la obligación de presentar suficiente evidencia sobre todos los elementos del delito y su conexión con el acusado, a fin de establecer su culpabilidad más allá de duda razonable. *Pueblo v. García Colón I*, supra, pág. 174 (2011); *Pueblo v. Santiago et al.*, 176 DPR 133, 143 (2009); *Pueblo v. Rivera Ortiz*, 150 DPR 457, 462 (2000). Esto constituye uno de los imperativos más básicos y esenciales del debido proceso de ley. *Pueblo v. Irizarry*, supra, 786 (2002); *Pueblo v. De León Martínez*, 132 DPR 746, 764 (1993).

Ahora bien, en múltiples ocasiones el Tribunal Supremo de Puerto Rico ha expresado que tal estándar de exigencia probatoria no significa que el Ministerio Público tiene que presentar prueba que establezca la culpabilidad del acusado con certeza matemática. *Pueblo v. Feliciano Rodríguez*, 150 DPR 443, 447 (2000) citando a *Pueblo v. Cruz Granados*, 116 DPR 3, 21-22 (1984); *Pueblo v. Rosario Reyes*, 138 DPR 591, 598 (1995); *Pueblo v. Pagán Ortiz*, 130 DPR 470, 480 (1992). Lo importante es que la prueba sea suficiente y satisfactoria en derecho. *Pueblo v. Torres García*, 137 DPR 56, 64 (1994). Es decir, se requiere prueba suficiente que "produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". *Pueblo v. García Colón I*, supra, págs. 175. Véase, además, *Pueblo v. Acevedo Estrada*, 150 DPR 84, 100 (2000).

En este particular, "la duda razonable que acarrea la absolución del acusado no es una duda especulativa o imaginaria, ni cualquier duda posible. Más bien, es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la

evidencia del caso". *Pueblo v. García Colón I,* supra*, pág. 175; Pueblo v. Santiago et al.*, supra, pág. 143; *Pueblo v. Irizarry*, supra, pág. 788. En síntesis, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada. En atención a ese principio, los foros apelativos deben tener la misma tranquilidad al evaluar la prueba en su totalidad. *Pueblo v. Casillas, Torres*, 190 DPR 398, 415 (2014).

En *Pueblo v. Casillas, Torres*, supra, nuestra Alta Curia enunció que:

> También se exige que la evidencia conecte al acusado con los delitos imputados, una función eminentemente propia del juzgador de la credibilidad. Dentro de la responsabilidad del tribunal de examinar la suficiencia, este ha de asegurarse de que la prueba de cargo sea una que, de ser creída, pueda conectar al acusado con el delito imputado.
>
> *Pueblo v. Casillas, Torres*, supra, pág. 415, citando a *Pueblo v. Colón Burgos*, 140 DPR 564, 581 (1996). (Énfasis suprimido).

Así, la apreciación realizada por el juzgador de los hechos sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho. Por tanto, la determinación de culpabilidad más allá de duda razonable es revisable en apelación como cuestión de derecho. *Pueblo v. Rodríguez Pagán,* 182 DPR 239, 259 (2011); *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 472 (1998); *Pueblo v. González Román*, 138 DPR 691, 708 (1995).

De igual forma, en intrínseca relación con el caso ante nos, es harto conocido que las reglas de derecho probatorio permiten que un hecho pueda probarse utilizando evidencia directa. De acuerdo con la Regla 110 (H) de dicho cuerpo normativo, la evidencia directa es aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. 32 LPRA Ap. VI, R. 110 (H). Sabido es, además, que la Regla 110 (D) de las de Evidencia dispone que: "la

evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho". 32 LPRA Ap. VI, R. 110 (D).

> [E]l testimonio de un testigo principal, por sí solo, de ser creído, es suficiente en derecho para sostener un fallo condenatorio, aun cuando no haya sido un testimonio "perfecto", pues "[e]s al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables.
>
> *Pueblo v. Toro Martínez*, 200 DPR 834, 860 (2018), citando a *Pueblo v. De Jesús Mercado*, 188 DPR 467, 476-477 (2013) (Énfasis suprimido).

Por ende, es al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15-16 (1995).

### C. *Ley de Vehículos y Tránsito*

Nuestro ordenamiento jurídico ha reconocido una fuerte política pública a favor de preservar la seguridad pública y de "evitar las muertes en las carreteras ocasionadas por conductores en estado de embriaguez". *Pueblo v. Montalvo Petrovich*, 175 DPR 932, 944 (2009), citando a *Pueblo v. Figueroa Pomales*, 172 DPR 403, 420-421 (2007). De este modo, nuestro estado de derecho reconoce "los peligros que representa para nuestra sociedad la práctica de conducir en estado de embriaguez o bajo los efectos de sustancias controladas". *Íd.* Como corolario de lo anterior, la *Ley de Vehículos y Tránsito del 2000*, Ley 22-2000, 9 LPRA sec. 5001, tipificó la ilegalidad de incurrir en la referida conducta, así como los mecanismos de intervención que las autoridades pertinentes pueden ejecutar frente a los ciudadanos.

En lo pertinente al caso de autos, el Artículo 7.01 del aludido estatuto, 9 LPRA sec. 5201, dispone que incurrirá en un delito menos grave toda persona que conduzca un vehículo en las vías públicas bajo los efectos de bebidas embriagantes, drogas o

sustancias controladas. A su vez, el Artículo 7.02 de esta Ley, 9

LPRA sec. 5202, establece lo siguiente:

> En cualquier proceso criminal por infracción a las disposiciones del Artículo 7.01 de esta Ley, aplicarán las siguientes normas con relación al nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, según surja tal nivel o concentración del análisis químico o físico de su sangre, de su aliento, o cualquier sustancia de su cuerpo constituirá base para lo siguiente:
>
> (a) Es ilegal per se, que cualquier persona de veintiún (21) años de edad, o más, conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho centésimas del uno por ciento (0.08%) o más, según surja tal nivel o concentración del análisis químico o físico de su sangre o aliento.
>
> [...]
>
> Las disposiciones de los anteriores incisos (a), (b), y (c) y (d) no deberán interpretarse en el sentido de que las mismas limitan la presentación de cualquier otra evidencia competente sobre si el conductor estaba o no bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción.

Por otra parte, el Artículo 7.04 de dicho cuerpo normativo, 9

LPRA sec. 5204, establece las penalidades que serán aplicables a los

delitos antes descritos. En lo concerniente a la controversia ante

nos, el mismo reza:

> **(a)** Toda persona que viole lo dispuesto en los Artículos 7.01, 7.02 o 7.03 de esta Ley incurrirá en delito menos grave. Cualquier agente del orden público o funcionario debidamente autorizado por ley que haya intervenido con una persona que viole las disposiciones enumeradas en este inciso, expedirá una citación para una vista de determinación de causa probable para su arresto, y no le permitirá que continúe conduciendo y lo transportará hasta el cuartel más cercano, donde permanecerá hasta tanto el nivel de alcohol en su sangre sea menor del mínimo permitido por ley o ya no se encuentre bajo los efectos de cualquier droga narcótica, marihuana, sustancias estimulantes o deprimentes, o cualquier sustancia química o sustancias controladas.
>
> **(b)** Si el nivel o concentración de alcohol en la sangre es de ocho centésimas del uno por ciento (0.08%) o más; o dos centésimas del uno por ciento (0.02%) o más en casos de personas entre los dieciocho (18) y veinte (20) años de edad, inclusive, conductores de camiones, motocicletas, ómnibus escolares, vehículos pesados de

servicio público y vehículos pesados de motor, o con alguna concentración de alcohol en la sangre en caso de menores de dieciocho (18) años de edad, y la persona fuere convicta de violar lo dispuesto en los Artículos 7.01, 7.02 o 7.03 de esta Ley, será sancionada de la siguiente manera:

**(1)** Por la primera infracción, con pena de multa de quinientos (500) dólares, más cincuenta (50) dólares por cada centésima adicional sobre el límite de concentración de alcohol establecido por ley, y pena de restitución de ser aplicable, así como la asistencia compulsoria a un programa de orientación debidamente certificado que el Departamento establecerá para tales casos, en conjunto con la Administración de Servicios de Salud Mental y contra la Adicción, dicho programa podrá tener un costo no mayor de (50) dólares si es ofrecido por el Departamento. Además, se le suspenderá la licencia por un término que no excederá de treinta (30) días y, de no cumplir con las condiciones de la sentencia y la rehabilitación impuestas, se le impondrá una pena de cinco (5) a quince (15) días de cárcel.

[…].

### D. Motivos Fundados

En *Pueblo v. Nieves Vives*, 188 DPR 1, 11-12 (2013), nuestra más alta instancia judicial expresó que la Cuarta Enmienda de la Constitución de Estados Unidos, Emda. IV, Const. EEUU, LPRA, Tomo 1, y el Artículo II, Sección 10, de la Constitución de Puerto Rico, Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, protegen el derecho del pueblo contra registros, incautaciones y allanamientos irrazonables. La disposición expuesta en estas cláusulas es la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano". *Pueblo v. Álvarez De Jesús*, 214 DPR 753, 765 (2024), citando a *Pueblo v. Salamanca Corchado*, 210 DPR 592, 591 (2022) y *Pueblo v. Nieves Vives*, 188 DPR 1, 12 (2013). Esta protección se extiende a los procedimientos de investigación criminal sobre el sospechoso de la comisión de un delito. En lo pertinente, nuestra Constitución dispone en esta sección que:

No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

[...]

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación describiendo particularmente el lugar o registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

Art. II, Sec. 10, Const. ELA, LPRA, Tomo 1.

Por consiguiente, se prohíbe, de ordinario, "el arresto de personas o los registros o allanamientos sin una orden judicial previa, apoyada en una determinación de causa probable". *Pueblo v. Nieves Vives*, supra, pág. 12. La orden judicial es necesaria para poder garantizar la dignidad e intimidad de las personas y sus efectos de posibles actuaciones arbitrarias del Estado. "Esta protección constitucional es de tal importancia que si un arresto se realiza sin orden judicial se presume inválido y le corresponde al Ministerio Público rebatir la presunción de irrazonabilidad". *Íd.,* págs. 12-13.

Existen motivos fundados si de la totalidad de las circunstancias del caso se desprende que una persona ordinaria y prudente poseería aquella información y conocimiento que la llevarían a creer que la persona intervenida ha cometido un delito. *Pueblo v. Calderón Díaz*, 156 DPR 549, 557 (2002); *Pueblo v. Colón Bernier*, 148 DPR 135, 142 (1999); *Pueblo v. Ruiz Bosch*, 127 DPR 762, 770 (1991). Ello, indistintamente de que luego se pruebe o no la comisión de tal delito. *Íd.; Pueblo v. Caraballo Borrero*, supra, pág. 273.

El concepto de "motivos fundados" es sinónimo del término "causa probable" empleado en el contexto de la expedición de una orden de arresto. La existencia de motivos fundados se determina a

base de criterios de probabilidad y razonabilidad. *Pueblo v. Ortiz Alvarado,* 135 DPR 41, 47 (1994). Lo verdaderamente importante es que el agente que efectúa un arresto y registro sin orden judicial previa tenga, al momento de hacerlo, una base razonable que se desprenda de la totalidad de las circunstancias para creer que se está violando o se iba a violar la ley. *Íd.* Dicho de otra manera, para dirimir si un agente del orden público tenía motivos fundados para arrestar a un ciudadano sin una orden, "es indispensable analizar la información que le constaba a éste y el cuadro fáctico que éste tenía ante sí al momento del arresto para, entonces, determinar si esos hechos pudieron llevar a una persona prudente y razonable a creer que la persona que iba a ser arrestada había cometido, o iba a cometer, la ofensa en cuestión". (Citas omitidas). *Pueblo v. Caraballo Borrero*, supra, págs. 273-274.

No puede olvidarse que "[c]ada delito tiene unas características externas, una manera de realizarse, que lo proyectan visualmente, tipifican la circunstancia delictiva y dirigen el raciocinio hacia la concreción de motivos fundados para el arresto". El agente del orden público debe relacionar el comportamiento de la persona que tiene ante sí con el conocimiento de los usos y costumbres de los infractores con los cuales el policía está familiarizado, máxime cuando se trata de delitos comunes de alta incidencia. (Cita omitida). *Íd.,* pág. 274.

A tales efectos, nuestro Máximo Foro ha expresado que una determinación de motivos fundados "no tiene que ser objeto de un análisis definido por un estándar de prueba rígido". *Pueblo v. Pérez Rivera*, 186 DPR 845, 866 (2012). Más bien, el juzgador de los hechos debe evaluar si, tomando en consideración el conjunto de las circunstancias, puede definirse que una persona ordinaria y prudente pudiese creer que la persona en cuestión cometió un delito. *Íd.* Siendo así, nuestro ordenamiento jurídico reconoce que

una determinación de causa probable se debe medir a base de un estándar objetivo, independientemente de que el agente interventor tuviese una creencia subjetiva de que tenía motivos fundados para intervenir. *Íd.*, pág. 869. Igualmente, nuestro Tribunal Supremo ha dispuesto que "un tribunal no está atado a las conclusiones o expresiones de un policía en lo relativo a los motivos fundados del arresto que realizó. Ello así, pues la misión del foro juzgador es evaluar la validez del arresto independientemente del criterio subjetivo del agente que lo realiza". *Íd.*, págs. 869-870.

En lo concerniente al caso de autos, el Artículo 7.09 de la Ley Núm. 22-2000, 9 LPRA sec. 5209, establece lo siguiente:

> Se considerará que toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo, un vehículo de motor, un vehículo pesado de motor o un vehículo todo terreno habrá prestado su consentimiento para someterse a la prueba de campo estandarizada de sobriedad (*Standard Field Sobriety Test*) así como al análisis químico o físico de su sangre, o de su aliento o de cualquier sustancia de su cuerpo, para los fines que se expresan en este Capítulo. La prueba de campo estandarizada de sobriedad, así como la prueba inicial del aliento serán practicadas en el lugar de la detención, por el agente del orden público o cualquier otro funcionario autorizado por ley. Si por circunstancias de seguridad no se puede realizar en el lugar de la detención se podrá realizar en un lugar cercano a la detención o en el cuartel más cercano.
> […]
>
> **(e)** Además de lo dispuesto en el inciso (c) de este Artículo, cualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo o haciendo funcionar un vehículo de motor que se someta a cualquiera de las pruebas iniciales, ya sea la prueba de campo estandarizada de sobriedad (*Standard Field Sobriety Test*) y/o la prueba de aliento y/o cualquier otra prueba establecida. Estas pruebas serán practicadas en el lugar de la detención, salvo que por circunstancias de seguridad no se pueda realizar en el lugar de la detención, en cuyo caso se podrá realizar en un lugar cercano a la detención y/o en el cuartel más cercano, si dicho agente:
>
> > **(1) Tiene motivo fundado para sospechar que la persona ha ingerido alcohol o ha utilizado sustancias controladas; o**
> >
> > (2) Si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente.

[…]. (Énfasis nuestro).

### E. Sentencia Criminal

Sabido es que en los procedimientos criminales, las partes quedan debidamente notificadas de la sentencia a partir del momento en que el Tribunal de Primera Instancia dicta la misma en corte abierta. *Pueblo v. Olmeda Llanos*, 152 DPR 267, 272-273 (2000). Asimismo, y conforme a lo dispuesto en la Regla 162 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 162, el foro primario deberá explicar verbalmente o por escrito, al momento de imponer la sentencia, las razones para la imposición de dicho dictamen. No obstante, contrario a lo que sucede en nuestro ordenamiento procesal civil en virtud de lo dispuesto en la Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. III, en el ordenamiento procesal penal no existe disposición alguna que de ordinario requiera al tribunal de instancia emitir sentencias o resoluciones fundamentadas como medio para consignar sus decisiones. *Pueblo v. Pacheco Armand*, 150 DPR 53, 59 (2000). Por lo cual, la Regla 162 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 163, permite que el foro sentenciador haga constar su dictamen en las minutas correspondientes, si las hubiere. *Íd.*

### III

Por estar relacionados entre sí, discutiremos los primeros dos errores en conjunto. En su *primer señalamiento de error*, la parte apelante alega que el Tribunal de Primera Instancia incidió al concluir que la agente Fuentes Sánchez tuvo motivos fundados para intervenir con el señor Zulueta Martínez el día de los hechos. A su vez, sostiene que existían incongruencias en las horas que dicha agente aseveró que se dieron los eventos, ya que el GPS de su vehículo oficial alegadamente reflejó que esta se encontraba en un área distinta a la de los hechos en las horas indicadas. Por

consiguiente, el señor Zulueta Martínez aduce que la evidencia que se obtuvo de dicha intervención debió suprimirse. Por otra parte, en su *segundo señalamiento de error*, la parte apelante alega que el Ministerio Público no probó su culpabilidad más allá de toda duda razonable, pues, a su juicio, la prueba presentada era insuficiente y conflictiva para sostener la convicción en su contra.

En primer lugar, debemos determinar si la agente Fuentes Sánchez tenía motivos fundados para intervenir con la parte apelante. A esos efectos, resumimos el testimonio vertido por esta en el juicio en su fondo.

Surge de la regrabación de los procedimientos que la agente Fuentes Sánchez declaró que, el 21 de noviembre de 2025, a las 9:11pm, se encontraba transitando la carretera núm. 169, cuando observó un vehículo Ford 150, de color blanco, que desobedecía las marcas en el pavimento.[2] Indicó que vio cuando dicho vehículo condujo en contra del tránsito, y que no fue hasta que otro vehículo sonó su bocina, que este regresó al carril que le correspondía. Acto seguido, la agente Fuentes Sánchez señaló que le indicó al referido conductor que se detuviera. Asimismo, surge de su testimonio que esta identificó al señor Zulueta Martínez como la persona que conducía el vehículo en controversia el día de los hechos.[3]

Continuó declarando la agente Fuentes Sánchez que, al detenerse, se acercó al vehículo por el lado del pasajero, y le informó a la parte apelante las infracciones a la Ley de Vehículos y Tránsito, *supra*, por las cuales lo detenía. Tras solicitarle la licencia de conducir y la registración del vehículo, la cual no tenía disponible, la agente Fuentes Sánchez notó que la parte apelante "expelía un fuerte olor a alcohol y tenía los ojos rojos".[4] Por consiguiente, la

---

[2] Regrabación de los procedimientos, 00:03:40-00:04:47.
[3] *Íd.*, 00:05:47.
[4] *Íd.*, 00:06:28.

testigo le solicitó que se bajara del vehículo para realizarle una prueba preliminar. Al este bajarse, la agente Fuentes Sánchez se percató que el señor Zulueta Martínez "no se estaba sosteniendo de pie bien, y que, en la parte frontal de su pantalón, visuali[zó] una mancha, [...] mojado, [...] y expedía un olor como a orín".[5] Siendo así, la agente Fuentes Sánchez procedió a leerle las advertencias de ley, las cuales la parte apelante firmó, a las 9:16pm, en el lugar de la intervención.[6] Posterior a ello, declaró que esperó veinte (20) minutos, antes de realizar la prueba de campo pertinente.

Mientras esperaba este tiempo, indicó que la parte apelante solicitó sentarse y pidió leer nuevamente las referidas advertencias.[7] Posteriormente, le realizó la prueba preliminar, en la cual el señor Zulueta Martínez arrojó 0.18% a las 9:40pm.[8] En consecuencia, la agente Fuentes Sánchez lo orientó y lo puso bajo arresto.

Emana de la regrabación que, en el contrainterrogatorio, la defensa intentó impugnar lo declarado por la agente Fuentes Sánchez. En esencia, esta confrontó a la testigo con alegada información que alegadamente, se desprendía del GPS del vehículo oficial utilizado por la referida agente el día de los hechos. Planteó que dicho GPS reflejó que la agente Fuentes Sánchez se encontraba en una ubicación distinta a la de los hechos en la hora en la cual esta señaló que intervino con el señor Zulueta Martínez. Cabe destacar que, a pesar de que la parte apelante hace alusión a un documento que contiene la aludida información, no surge del expediente ante nos que el mismo se haya admitido en evidencia, por lo que, no estamos en posición de entender sobre el mismo.

Posterior al arresto, la agente Fuentes Sánchez declaró que transportó al señor Zulueta Martínez a la División de Tránsito de

---

[5] *Íd.*, 00:07:05-00:07:24.
[6] *Íd.*, 00:12:57.
[7] *Íd.*, 00:13:05-00:13:40.
[8] *Íd.*, 00:13:45.

Guaynabo, y que, luego de varios incidentes impertinentes pormenorizar, llenó la hoja de los *Pasos Operacionales* correspondientes al *Informe sobre Prueba de Alcohol por Aliento*.[9] Sin embargo, tanto a preguntas del Ministerio Público como de la defensa, la agente Fuentes Sánchez reconoció que, a pesar de que los hechos en controversia ocurrieron el 21 de noviembre de 2025, dicho documento tenía como fecha el 21 de diciembre de 2025.[10] Aun así, explicó que suscribió el mismo el día de los hechos y que no se había percatado de la discrepancia en la fecha.

Luego de varios incidentes procesales, la agente Fuentes Sánchez declaró que le realizó la prueba de aliento y que esta, a las 22:01:20, arrojó un resultado de 0.153%.[11] Además, reiteró que, como consecuencia de su intervención inicial, se expidieron dos (2) multas al señor Zulueta Martínez, una por desobedecer las marcas en el pavimento y otra por conducir en contra del tránsito.[12] Igualmente, señaló que la hora incluida en ambos boletos era a las 9:11pm.

A la luz de lo anterior, concluimos que el Tribunal de Primera Instancia no erró al determinar que la agente Fuentes Sánchez poseía motivos fundados para intervenir con la parte apelante. La prueba testifical y documental presentada demostró que la intervención se produjo luego de que la agente Fuentes Sánchez observara directamente que el señor Zulueta Martínez desobedecía las marcas en el pavimento y conducía en contra del tránsito. Tales circunstancias, además de constituir infracciones a la Ley Núm. 22, *supra*, quedaron corroboradas mediante los boletos expedidos y admitidos en evidencia.[13]

---

[9] *Véase*, Autos Originales, Exhibit Núm. 3; Regrabación de los procedimientos, 00:14:45.

[10] Regrabación de los procedimientos, 00:18:03 y 00:47:55

[11] *Íd.*, 00:23:00; véase, además, Autos Originales, Exhibit Núm. 4.

[12] *Íd.*, 00:24:28; véase, además, Autos Originales, Exhibit Núm. 5 y 6.

[13] *Véase*, Autos Originales, Exhibit Núm. 5 y 6.

Por otro lado, si bien la defensa intentó cuestionar la credibilidad de la agente Fuentes Sánchez, el Tribunal de Primera Instancia entendió que su testimonio merecía credibilidad y ofrecía suficientes garantías de confiabilidad. En ausencia de la existencia de pasión, perjuicio, parcialidad o error manifiesto, somos del criterio que esta Curia está impedida de intervenir con la apreciación de la prueba realizada por el foro apelado. Por tanto, las determinaciones de hechos del foro de instancia son acreedoras de la deferencia apelativa que nuestro ordenamiento jurídico les reconoce.

Atendido lo anterior, concluimos, además, que el Ministerio Público probó la culpabilidad de la parte apelante más allá de duda razonable. En particular, quedó demostrado que, el 21 de noviembre de 2025, el señor Zulueta Martínez condujo un vehículo de motor con una concentración de alcohol en sangre de 0.153%, cifra superior al límite permitido por la Ley Núm. 22, *supra.* Sin embargo, la determinación de culpabilidad no descansó exclusivamente sobre dicho resultado. La prueba presentada demostró, además, que la parte apelante desobedeció las marcas en el pavimento, condujo en contra del tránsito, presentaba los ojos enrojecidos, despedía un fuerte olor a alcohol y exhibía dificultad para mantenerse en pie. Igualmente, la agente observó una mancha húmeda en la parte delantera de su pantalón que despedía un olor similar al de orina. Así pues, considerados en conjunto tanto el resultado de las pruebas de alcohol como las observaciones realizadas por la agente Fuentes Sánchez durante la intervención, coincidimos con la determinación del Tribunal de Primera Instancia de que el Ministerio Público satisfizo la carga probatoria que le impone nuestro ordenamiento jurídico, y, por consiguiente, probó más allá de duda razonable todos los elementos del delito imputado.

Por otro lado, en su *tercer señalamiento de error,* la parte apelante alega que el Tribunal de Primera Instancia no expuso fundamentos suficientes para concluir que se probaron los motivos fundados de la agente Fuentes Sánchez para intervenir con la parte apelante, así como por qué concluyó que el testimonio de dicha testigo merecía credibilidad. Evaluado el planteamiento, somos del criterio que el señor Zulueta Martínez erra en su raciocinio.

Según expusimos previamente, ni la Regla 162 de Procedimiento Criminal, *supra,* ni la jurisprudencia interpretativa de la materia exigen que, en procedimientos criminales, el foro sentenciador emita una sentencia escrita acompañada de determinaciones detalladas de hechos y conclusiones de derecho, como sí ocurre en ámbitos civiles o administrativos. Basta con que el acusado quede adecuadamente informado de las razones que sustentan la determinación adoptada, de modo que pueda ejercer efectivamente su derecho a revisión.

Aun así, en el caso que nos ocupa, surge claramente de la regrabación de los procedimientos que el juzgador de los hechos explicó de forma suficiente su determinación, previo a imponer la pena en cuestión. Específicamente, emana que, al dictar la *Sentencia* apelada, el foro *a quo* expresó lo siguiente:

> Usted ha enfrentado un juicio por una infracción al Artículo 7.02 de la Ley de [Vehículos y] Tránsito, que es conducir bajo los efectos de bebidas embriagantes con un 0.15% de alcohol en la sangre. Y voy a hacer varias expresiones en cuanto a la prueba desfilada. Nosotros somos del criterio que en este caso se cumplió con los motivos fundados requeridos para su detención, con los boletos expedidos. Sin duda alguna, se trata de un caso donde se tomó la providencia de hacerle una prueba de campo, seguido de la prueba oficial, que vendría siendo la prueba del *Intoxilyzer*, en la división de tránsito. Se [...] ha tratado de impugnar, específicamente en lo que respecta al periodo de observación requerido de veinte (20) minutos para la realización de la prueba, con diferentes elementos que se han traído a la atención del tribunal. Cuando uno analiza la prueba en cuanto al periodo de observación, fíjese que eso va dirigido más bien a si se debe tomar en cuenta el 0.15 o no se debe tomar en cuenta el 0.15, porque el tribunal,

ciertamente, en cuanto a signos y otros elementos que tiene de juicio, en cuanto a si la persona está conduciendo bajo los efectos de bebidas embriagantes, lo puede tomar en consideración. [E]n este caso pues se ha traído a la atención por la agente un sinnúmero de signos adicionales. Pero cuando vamos al periodo de observación, la pauta del Tribunal Supremo es si brinda suficientes garantías de confiabilidad de que se cumplió con el periodo de observación de veinte (20) minutos, y nosotros somos del criterio que en este caso, a la luz de la totalidad de las circunstancias se cumplió sustancialmente con las garantías de confiabilidad de la prueba. [A]sí las cosas, nosotros lo estamos encontrando culpable de infracción al Artículo 7.02 de la Ley [Núm.] 22.[14]

De igual forma, inconforme con lo resuelto, la parte apelante solicitó la reconsideración. En respuesta a ello, el foro de instancia reafirmó su dictamen, y abundó sobre las razones que la sustentaban, expresando lo siguiente:

[Y]o en el descargue de mi prueba, yo tengo que tener la consciencia tranquila y coincido con usted. Si tengo duda razonable, [...] yo soy el primero en reconocerlo y absolver. En este caso mi consciencia está tranquila. Yo no tengo duda en este caso. Quiero puntualizar un aspecto, porque le reconozco que la agente dijo las dos cosas. En ciertos momentos, ante la habilidad suya en el contrainterrogatorio, porque naturalmente tiene que ver con las destrezas suyas al momento de hacer las preguntas, le reconoció en algunas ciertas inexactitudes en ciertos documentos, creo que dio una explicación bastante razonable en porque eso existía en cierta prueba, en ciertos documentos, los esfuerzos que hizo para corregirlo, pero más importante aún, y no quiero que pierdan de perspectiva, hay un caso, [...] es *Pueblo v. Pérez [Rivera]*, [...]. El Tribunal Supremo atendió un aspecto bien importante [...]. [E]l Tribunal Supremo habla de cuál es el criterio medular a la hora de evaluar el testimonio de un testigo. Si es el criterio subjetivo, entiéndase subjetivo como la apreciación del testigo en que entiende que sucedió o qué fue, y el criterio objetivo, que es el rol que tiene que asumir el tribunal en analizar la data objetiva del testimonio, y llegar a sus propias conclusiones, porque, ciertamente, ese es mi deber en este caso. En ese caso de *Pueblo v. Pérez [Rivera]*, era un contexto muy particular de motivos fundados y el agente durante su testimonio indicó, admitió que no tenía motivos fundados. Y el tribunal dijo que a pesar de que el agente indicó no tener motivos fundados, si analizamos toda la prueba presentada es evidente que contaba con los motivos fundados desde la perspectiva objetiva [...]. Y yo soy del criterio que en este caso, desde una perspectiva, sin duda alguna, objetiva, si aplicáramos ese criterio, que la agente cumplió con lo que le es requerido. Hizo dos pruebas, tenía motivos

---

[14] Regrabación de los procedimientos, 1:11:06- 1:13:30.

fundados para detener, hizo la prueba de campo, aguardó el tiempo, y nosotros entendemos que hay suficiente garantía de confiabilidad en cuanto a la prueba.[15]

En consecuencia, tras revisar la regrabación de los procedimientos, y contrario a lo argüido por la parte apelante, justipreciamos que, tanto la *Sentencia* dictada por el Tribunal de Primera Instancia, como la determinación emitida respecto a la solicitud de reconsideración, demuestran que la misma estuvo lo suficientemente fundamentada para que el señor Zulueta Martínez estuviese informado de la convicción en su contra y poder solicitar la revisión del dictamen ante nos. Incluso, a pesar de que nuestro ordenamiento no lo exige, se desprende que el foro de instancia explicó de forma clara y sencilla que, luego de haber evaluado la prueba pertinente, concluyó que se probaron todos los elementos del delito imputado. Además, el foro primario reconoció que la defensa intentó impugnar el testimonio de la agente Fuentes Sánchez, pero que, tomando en consideración la totalidad de las circunstancias, y conforme al derecho aplicable, determinó que la prueba desfilada tenía suficientes garantías de confiabilidad, por lo que merecía su credibilidad.

Por último, en su *cuarto señalamiento de error*, la parte apelante sostiene que el foro *a quo* incidió al imponer el pago de trescientos cincuenta dólares ($350.00) adicionales a la multa de quinientos dólares ($500.00) dispuestos por el aludido estatuto. Plantea que, al tomar en consideración el margen de error aplicable al *Intoxilyzer,* instrumento utilizado para llevar a cabo la prueba de alcohol en controversia, la cantidad adicional debió ascender hasta un máximo de trescientos dólares ($300.00). Sin embargo, al revisar el expediente ante nuestra consideración, no surge de manera alguna que dicho planteamiento se hubiese presentado ante el

---

[15] *Íd.*, 1:22:53-1:26:06.

Tribunal de Primera Instancia. En consecuencia, tal y como es hartamente conocido, como Tribunal de Apelaciones nos abstenernos de resolver cualquier cuestión que no se hubiese planteado ante el foro primario previo a solicitar nuestra revisión.[16]

**IV**

Por los fundamentos antes esbozados, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[16] Véase, *Dorado del Mar v. Weber et als.*, 203 DPR 31, 52 (2019); *Sánchez Ruíz v. Higueras Pérez et al.*, 203 DPR 982 (2020); *Abengoa, S.A. v. American Intl. Ins.*, 176 DPR 512, 526 (2009); *Echandi Otero v. Stewart Title*, 174 DPR 355, 383 (2008); *Trabal Morales v. Ruíz Rodríguez*, 125 DPR 340, 351 (1990).